UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NICOLE MARIE WATSON,<br><br>Defendant. | 4:18-cr-40018-KES-1<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Nicole Watson, filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Docket 51. The Federal Public Defender filed a notice of intent not to file a supplemental briefing on Watson's behalf. Plaintiff, the United States of America, opposes Watson's motion. Docket 53. Watson filed a reply to the government's opposition to her motion for compassionate release. Docket 55. For the following reasons, Watson's motion for compassionate release is denied.

## BACKGROUND

On December 10, 2018, Watson entered a plea of guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. *See* Dockets 32, 37. On March 25, 2019, the court sentenced Watson to a total of 180 months in custody. Docket 47. Watson's projected release date is January 4, 2030. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 8, 2024) (enter BOP register number 10240-173). Watson is incarcerated at the Federal Correctional Institution, Waseca (FCI Waseca), a low security federal correctional institution. *See id.*; *FCI* WASECA, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/was/ (last visited Mar. 8, 2024).

**DISCUSSION**

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). One narrow exception is the First Step Act (FSA), passed by Congress in 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. *Id.* Compassionate release allows defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Prior to granting a reduction under 18 U.S.C. § 3582(c)(1)(A)(i), a court must consider the 18 U.S.C. § 3553(a) sentencing factors. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

**I.    Administrative Exhaustion**

Before the FSA's passage, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. *See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [BOP] to bring a motion on the defendant's behalf or the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Watson submitted a request for compassionate release to the warden of FCI Waseca on September 18, 2023. Docket 52 at 88. The warden denied the request on October 18, 2023. *Id.* at 89. When a warden denies a request for a reduction in sentence, the defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf[.]" 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Smith*, 460 F. Supp. 3d 783, 794-97 (E.D. Ark. 2020) (holding the FSA only allows a defendant to "file a motion for compassionate release if he has fully exhausted his administrative remedies" within the BOP). The record contains no evidence that Watson appealed the warden's denial through the BOP. *See* Docket 52.

The record does not reflect that Watson exhausted her administrative remedies, but the government has not raised this issue and thus has waived the argument. *See United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (characterizing 18 U.S.C. § 3582(c)(1)(A)'s procedural requirements as "mandatory claim-processing rule[s]" that "must be enforced *so long as the opposing party properly raises it.*" (emphasis added)); *see also United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) ("Not a jurisdictional limitation, § 3582(c)(1)(A)'s exhaustion requirement is a 'claim-processing rule[]' and accordingly 'may be waived or forfeited' by the government." (quotation omitted)). Because the government has not raised the issue, the court will review the merits of Watson's motion.

## II.   Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release

3

and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G. § 1B1.13(b)(1)-(4), amend. 814; *2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited Mar. 8, 2024).

The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an usually long sentence, served at least ten years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

Rehabilitation of the defendant is not an "extraordinary and compelling reason" in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An "extraordinary and compelling

4

reason" need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

Watson argues that her family circumstances constitute an "extraordinary and compelling reason" for early release. Docket 51 at 1. The court does not address any of the other "extraordinary and compelling reasons" identified by the Sentencing Commission because Watson does not argue that any of those circumstances exist here.

### A. Family Circumstances of the Defendant

The guidelines identify four situations in which the family circumstances of the defendant constitute an "extraordinary and compelling reason" warranting early release. The first family circumstance warranting early release is due to "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self care because of . . . disability or a medical condition." U.S.S.G. § 1B1.13(b)(3)(A). The second reason is due to "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13(b)(3)(B). The third family circumstance warranting early release is due to "the incapacitation of the defendant's parent or registered partner when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). The fourth reason is when the defendant is the only available caregiver for any other immediate family member or similar individual. U.S.S.G. § 1B1.13(b)(3)(D). Other courts have relied on the BOP program statement in determining that "incapacitation" requires that the family member

5

have suffered a severe injury or illness, leaving them incapable of acting as a caregiver. *See United States v. Delgado*, 2023 WL 4552890, at *2 (M.D. Pa. July 14, 2023); *United States v. Greer*, 2021 WL 2651089, at *2 (E.D. Tex. June 28, 2021); BOP, *Program Statement 5050.50* 10 (2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited Mar. 8, 2024).

Watson argues that compassionate release is warranted because her children's "current living situation is in the process of being terminated due to the guardians no longer wanting to deal with [her] children's mental and behavioral health issues." Docket 51 at 1. She further alleges her mother's health is in decline. *Id.* She asserts "compassionate release will allow [her] to not only care for [her] children but for [her] mother as well." *Id.* Sarah Edwards wrote a letter on Watson's behalf stating she offered Watson a place to stay until she can get a place of her own. Docket 54.

Watson's Presentence Report (PSR) states she has five children. Docket 40 at 22. Her oldest son, T.S., who was 14 as of March 18, 2019, resides with his grandfather. *Id.* As of March 18, 2019, Watson's three middle children were ages 7, 8, and 12. *Id.* When Watson was arrested in 2007, these children were taken into CPS custody and placed in foster care. *Id.* Watson reported that she has regular contact with these children and their foster family brings them to Sioux Falls every two weeks, so she is able to see them. As of March 18, 2019, Watson's youngest child was two years old. *Id.* Watson reported that she raised her youngest child until she was arrested, and the child is residing with the child's maternal grandmother in Michigan. *Id.*

6

Watson alleged that the caregivers of her minor children, a foster family, are unable to provide continued care. Docket 51. The foster mother states her husband travels, and when she is the sole caregiver for Watson's children, she has had to call police "because each of them has gotten physical with" her. *Id.* at 2. The foster mother states there is no other person to care for Watson's children. *Id.*

Watson claims her mother is "increasingly sick" and in the hospital due to her rapid weight loss and lack of strength. *Id.* at 1, 5. She alleges her mother is unable to care for herself. *Id.* Watson submitted her mother's medical records to the court; she failed to cite specific portions that would support a conclusion that her mother is unable to care for herself or what condition causes the incapacity. *See* Docket 51 at 72-115.

Compassionate release is not warranted in circumstances similar to Watson's unless she shows that she is the *sole* available caregiver to her minor children or mother. *See United States v. Crow*, No. CR. 21-50056-JLV, 2023 WL 4493500, at *4 (D.S.D. July 12, 2023); *United States v. Cates*, 2023 WL 167409, at *3 (M.D.N.C. Jan. 12, 2023); *United States v. Hall*, 2022 WL 2105975, at *3 (D. Md. June 10, 2022) ("Generally, compassionate release based on family circumstances has only been granted where a defendant is the sole available caregiver for his or her minor child or a closely-related and incapacitated adult.").

Throughout her motion and related filings, Watson fails to establish that she is the sole available caregiver for her children or mother. *See generally* Dockets 51, 55. Without evidence that Watson is the only available caregiver,

7

the court cannot determine whether Watson's family circumstances give rise to "extraordinary and compelling reasons" for her release. *See United States v. Hill*, 2020 WL 3037226, at *3 (W.D. Ark. June 5, 2020) (Assuming defendant's wife was incapacitated, the court "would still need additional, credible evidence as to the lack of alternative caregivers in order to make a definitive finding that [the defendant] is the only available caregiver"); *United States v. Nguyen*, 2021 WL 4952838, at *1 (D. Minn. Oct. 25, 2021) (denying compassionate release where the defendant did not show the allegedly incapacitated person was the sole caregiver of his children").

Assuming Watson is the sole caregiver for her children, Watson failed to provide evidence that she would be eligible to have custody of her children, what her custodial rights over them might be, or her overall suitability to function as their primary caregiver.

Guidance from the BOP, as it relates to U.S.S.G. § 1B1.13 cmt. n.1(C)(i), instructs that the best interests of the child should be considered by examining the inmate's history with her children and behavior before and during custody. BOP Program Statement 5050.50 at 8–9 (Jan. 17, 2019), https://perma.cc/98YN-KRQX. One court in this district has cited to this Program Statement in evaluating the best interest of a child when it determined whether the defendant was a suitable parent. *United States v. Seeking Land*, No. 3:15-CR-30081-RAL, Docket 66 (D.S.D. Nov. 18, 2021) (quoting *Id.*). The Program Statement factors include evaluation of whether the inmate has committed violent acts, whether drugs or other dangerous substances were present in the home, the amount of contact the parent had with the child, whether there is

evidence of child abuse or neglect, whether there exists documentation of the inmate's parenting skills or termination of parental rights, and the amount of programming the inmate was involved in while incarcerated. *Id.*

The court in *Seeking Land* cited the defendant's absence from the child during most of the child's life and the defendant's three felony convictions when it denied the motion for compassionate release. *Id.* at 9. The court noted it could not determine the inmate's fitness as a parent or whether it would be in the child's best interest to have the inmate serve as caregiver but noted its skepticism given the defendant's record. *Id.*

In the present case, Watson has not made a sufficient showing, supported by evidence or specific details, to meet several of the BOP factors. Although Sarah Edwards wrote a letter stating she offered Watson a place to stay until she can get a place of her own, the letter makes no mention of where Watson's children or mother would live. *See* Docket 54.

Analyzing the first BOP factor, while Watson has prior convictions for reckless driving, careless driving, and driving under the influence, there is no evidence that Watson committed a violent act before or during her period of incarceration.

Second, prior to Watson's incarceration, she had drugs and drug paraphernalia in her home while caring for her children. She reported that she began using methamphetamine (meth) at age 18 or 19, used heavily into adulthood, except while she was pregnant, and she "was never able to stay away from the drug permanently." Docket 40 at 24. In 2017, Watson's children were present when she was pulled over for driving with a suspended license

9

and the police officer could detect the odor of marijuana coming from the vehicle. *Id.* at 19. A search of her person revealed .8 grams of meth, .6 grams of marijuana, one oxycodone pill, ten hydrocodone pills, and a pipe with marijuana residue. *Id.* An additional 1.2 grams of marijuana was found in the back seat. *Id.* In 2007, a confidential informant (CI) conducted three controlled buys for the purchase of crack cocaine, and Watson and two of Watson's children were present during all three of the controlled buys. *Id.* at 15. The controlled buys resulted in the purchase of .90 grams of crack cocaine. *Id.*

Watson admitted she sold drugs to both support her addition to meth, as well as to support her children. *Id.* at 8.

Third, prior to Watson's arrest on the instant offense, she reported that she had custody of her youngest child, who was two years old as of March 18, 2019. *Id.* at 22. This child now resides with the child's maternal grandmother in Michigan. *Id.* Her oldest son, who was 14 as of March 18, 2019, resided with his grandfather. *Id.* Watson's three middle children were taken into CPS custody and placed in foster care when she was arrested in 2007. *Id.* The court lacks information on the current relationship between Watson and her children.

Fourth, there is no evidence that Watson committed child abuse or neglect of her children. Instead, the PSR notes that Watson would like to maintain sobriety and re-establish relationships with her children, which have been damaged by her incarceration. *Id.*

Turning to the fifth and sixth factors, there are no documents regarding Watson's parenting skills or obligations nor any records regarding the termination of parental rights or loss of custody of Watson's children.

Lastly, while incarcerated, Watson has participated in several education courses, including Parenting from a Distance and Racquetball. Docket 52 at 78-79. Watson's records show she still needs education on a number of matters, including family/parenting, antisocial peers, rec/leisure/fitness, trauma, and substance abuse. *Id.* at 80.

The BOP Program Statement 5050.50 weighs against Watson's release to care for her children. Watson's efforts toward rehabilitation and her love and concern for her children, though admirable and understandable, do not satisfy "extraordinary and compelling" circumstances to justify FSA relief given the absence of a concrete release plan or better information about where Watson and children may live. Watson's previous repeated choices to involve her children in her criminal activities, along with her history of failed treatment, recidivism, and criminal activity requires more than just a promise from her that she will do better. The record provides insufficient support for any claim that Watson should be released to care for her children, or that the best interests of her children would be advanced by her release.

## III. Sentencing Factors of § 3553(a)

The § 3553(a) sentencing factors confirm that compassionate release is not warranted. The first factor the court considers is "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). Watson was involved in a conspiracy to

11

distribute large quantities of meth. *See* Docket 40 at 3-8. In the PSR, Watson is implicated in many transactions involving the drug. *Id.* The amount of meth involved in the conspiracy exceeded seven kilograms. *Id.* at 7-8. The large scale of this conspiracy weighs heavily against release.

Waston's history and characteristics also weigh against a reduction in her sentence. Watson has extensive history of drug and alcohol use and criminal history beginning in 1997, when she was only thirteen years old. *Id.* at 9-18. She has been diagnosed with alcohol, cannabis, and amphetamine dependence. *Id.* She has undergone outpatient treatment for her drug and alcohol use. *Id.* at 24-25. Watson committed the instant offense while under a criminal justice sentence for Unauthorized Ingestion of Controlled Substance. *Id.* at 18. Watson's criminal history score was 9, reflecting the seriousness of the crimes previously committed. *Id.* In 2018, Waston underwent a mental health evaluation while in pretrial detention at the Yankton County Jail. *Id.* Watson reported feeling depressed since the birth of her child in 2006 and was diagnosed with depressive disorder, anxiety disorder, and amphetamine dependence. *Id.* The court concludes that Watson's personal characteristics weigh against release.

The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). Watson committed a very seriousness offense. Granting compassionate release would not promote respect for the law nor provide just punishment. The PSR outlines that Watson was involved in a large meth distribution conspiracy. *See* Docket 40 at 3-8. The

court's interest in just punishment demands that Watson's sentence reflect the gravity of her offense.

The remaining § 3553(a) factors also do not support a sentence reduction. If the court were to grant compassionate release, similar conduct in others would not be deterred because Watson's punishment would not be severe enough to act as an effective deterrent. *See* 18 U.S.C. § 3553(a)(2)(B). The sentence the court imposed was at the mandatory minimum and was one month less than the low end of the Guideline range applicable to her offense. *See* Docket 40 at 120-121. This sentence reflected the seriousness of the offense. Requiring her to serve the full sentence imposed promotes respect for the law, provides just punishment, and protects the public from her.

## CONCLUSION

Watson has failed to satisfy the "extraordinary and compelling reason" standard required to grant for relief under the FSA. Thus, it is

ORDERED that the defendant's motion for relief under the FSA (Docket 51) is denied.

Dated March 8, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE