UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICOLE MARIE WATSON,<br><br>Defendant. | 4:18-CR-40018-KES<br><br><br>ORDER GRANTING MOTION<br>FOR COMPASSIONATE RELEASE |

Defendant, Nicole Marie Watson, filed a motion, through her counsel, for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 69. Plaintiff, the United States of America, opposes Watson's motion. Docket 73. Watson replied to the government's response. Docket 76. Watson has supplied numerous letters and exhibits to support her request for compassionate release. *See* Dockets 69-1-69-21. For the following reasons, Watson's motion for compassionate release is granted.

## BACKGROUND

On December 10, 2018, Watson pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* Dockets 1, 32, 37. On March 25, 2019, the court sentenced Watson to 180 months in custody with 10 years of supervised release. Dockets 46, 47. Watson's projected release date is January 04, 2030. Docket 69-2 at 2; *see also Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 23, 2025) (enter BOP register number 10240-173). Watson is

currently incarcerated at FCI Waseca, a low security correctional institution. *See Find an Inmate*, Fed. Bureau of Prisons, (last visited July 23, 2025) (enter BOP register number 10240-173); *FCI Waseca*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/was/ (last visited July 23, 2025).

## DISCUSSION

Sentences are final judgments, meaning a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress passed The First Step Act (FSA) in 2018, facilitating an exception to the finality of sentences. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In relevant part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). A reduction in sentence must consider the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires both "extraordinary and compelling reasons" to warrant a sentence reduction and the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)-(b). The policy statement was amended on November 1, 2023, to reflect that a defendant may initiate motions for compassionate release which a

court may, in its own discretion, grant or deny. U.S.S.G. § 1B.13, amend. 814.

Amendment 814 to the Sentencing Commission policy statement also expands

the list of extraordinary and compelling reasons justifying compassionate

release. *See id.; 2023 Amendments in Brief*, U.S. Sent'g Comm'n,

https://www.ussc.gov/sites/default/files/pdf/amendment-process/

amendments-in-brief/AIB_814.pdf (last visited May 28, 2025).

## I.    Administrative Exhaustion

Before the FSA's passage, only the Bureau of Prisons (BOP) Director had

the authority to bring a compassionate release motion on a defendant's behalf.

18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018).

With the enactment of the FSA, Congress has permitted courts to grant a

motion for a reduction in sentence filed by a defendant "after the defendant has

fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion on the defendant's behalf or the lapse of 30 days

from the receipt of such a request by the warden of the defendant's facility,

whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Watson submitted a request for compassionate release to the warden of

her correctional facility on November 25, 2024. Docket 69-13. Watson's request

was denied by the warden on December 18, 2024. Docket 73-1. Watson filed

her motion for compassionate release with the court on March 13, 2025.

Docket 69. Thirty days have passed between Watson's administrative request

and the filing of the instant motion. The United States concedes that Watson

exhausted her administrative remedies, thereby waiving the issue. *See* Docket

73 at 3; *see also United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021)

(characterizing 18 U.S.C. § 3582(c)(1)(A)'s procedural requirement as a "mandatory claim-processing rule" that "must be enforced so long as the opposing party properly raises it"). Thus, the court will review the merits of Watson's motion.

## II.    Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G. § 1B1.13(b)(1)-(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an usually long sentence, served at least 10 years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

Watson argues that the family circumstances and catch-all categories constitute extraordinary and compelling reasons for her release. *See* Docket 69 at 5-21. The United States argues neither the family circumstances or catch-all categories are extraordinary and compelling reasons for Watson's release. *See* Docket 73 at 4-8. The court will consider Watson's motion under the family circumstances and catch-all categories. U.S.S.G. §§ 1B1.13(b)(3), (5). The court does not consider the categories for medical circumstances, victimization by correctional staff, age, or unusually long sentence because Watson does not argue that any of those categories apply here. U.S.S.G. §§ 1B1.13(b)(1-2), (4), (6).

### A.    Defendant's Family Circumstances

To justify compassionate release under the family circumstances category, U.S.S.G. § 1B1.13(b)(3) the defendant's circumstances must satisfy one of the following four categories. First, the death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. U.S.S.G. § 1B1.13(b)(3)(A). Second,

incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. U.S.S.G. § 1B1.13(b)(3)(B). Third, incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent. U.S.S.G. § 1B1.13(b)(3)(C) Fourth, that circumstances like those listed in paragraphs (3)(A) through (3)(C) exist involving an immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver. U.S.S.G. § 1B1.13(b)(3)(D).

Watson argues her need to care for and maintain parental rights over her 13-year-old daughter (Minor Daughter) is an extraordinary and compelling reason for her release. *See* Docket 69 at 2-19. Watson argues that Minor Daughter lacks any available caretaker after being placed in foster care and Watson's parental rights over Minor Daughter are in the process of being terminated due to her incarceration. *Id.*; *see also in re A.L.L. and D.L.L*, 49JUV24-000288 (S.D. Cir. Ct); Docket 78 (indicating Watson is in the appeals process of her parental rights termination). The United States argues that Minor Daughter's placement in foster care qualifies as having a valid caretaker and that Watson would not be a suitable caretaker for Minor Daughter. *See* Docket 73 at 4-8 (applying the BOP's program statement found at 5050.50 as guidance on whether Watson is a valid caretaker). Watson's argument would best correspond to subcategory (A) where the defendant's minor child's caretaker is incapacitated without any other available caretakers. U.S.S.G.

§ 1B1.13(b)(3)(A).

### 1.    Whether Minor Daughter is Without a Valid Caretaker

Under subcategory (A), Watson must show that the caregiver of her children is incapacitated and that her children lack any other valid caregiver. U.S.S.G. § 1B1.13(b)(3)(A); *see United States v. Crow*, 2023 WL 4493500, at *4 (D.S.D. July 12, 2023); *see also United States v. Chavez-Benitez*, 2025 WL 1169406, at *3-4 (D.S.D. Apr. 22, 2025). Though incapacitation often is satisfied by death or serious illness, incapacitation of a caretaker, due to incarceration or loss of custody, may be a valid form of incapacitation under U.S.S.G. § 1B1.13(b)(3)(A). *United States v. Gant*, 2024 WL 1879567, at *3 (N.D. Ind. Apr. 29, 2024) ("[L]egal incapacitation of a caregiver such as incarceration of the caregiver or placement of children in foster care, can constitute an extraordinary and compelling circumstance."); *see also United States v. Fields*, 569 F. Supp. 3d 231, 240 (E.D. Pa. 2021); *United States v. Ramos*, 2021 WL 4507464, at *4-5 (N.D. Iowa Oct. 1, 2021) (finding incarceration of mother, former caregiver, and placement of children in foster care could constitute incapacitation though defendant still must have parental rights or evidence he would regain custody upon release). Other courts are split, however, on whether placement of the minor child into foster care means the minor child has a valid caregiver. *See United States v. Willis*, 2024 WL 4452134, at *2 (D. Minn. Oct. 9, 2024) (stating courts typically find placement in foster care is not *prima facie* evidence of an extraordinary and compelling reason for release); *Ramos*, 2021 WL 4507464 at *4-5 (indicating "[o]n the surface" the fact

7

children were in foster care seemed to show incapacitation of the caregiver of the defendant's minor child); *United States v. Pearson*, 2022 WL 8090111, at *1-3 (E.D. Mich. Oct. 14, 2022) (granting compassionate release when child was in foster care and noting that it is not the court's place to weigh suitability of defendant as a parent). Here, to show Minor Daughter's caregiver is incapacitated, there must be evidence of some deficiency in her foster care placement.[1] *Willis*, 2024 WL 4452134, at *2 ("A defendant would need to show some deficiency in the foster care placement to be successful."); *United States v. Ingram*, 2020 WL 3104643, at *3 (D. Minn. June 11, 2020) (holding the record must reflect that the "child is at risk of harm or will not be cared for").

Watson has provided evidence showing that Minor Daughter is without any valid caregiver. *See* Docket 69 at 6-17; Docket 69-4 at 2-3 (showing court-ordered termination of former guardianship); Docket 69-7 at 1 and Docket 69-8

---

[1] The United States argues that placement in foster care means, at least on its face, there is a valid caregiver for a minor child. *See* Docket 73 at 4-5 ("The United States recognizes this is a foster care placement, but courts have recognized that 'placement of a defendant's children in foster care is not an extraordinary and compelling circumstance.'") (quoting *Willis*, 2024 WL 4452134, at *2). Agreeing with this proposition potentially negates U.S.S.G. § 1B1.13(b)(3)(A), which requires that the minor child have no other valid caregiver. *See* U.S.S.G. § 1B1.13(b)(3)(A). If foster care is considered a valid caregiver, then U.S.S.G. § 1B1.13(b)(3)(A) would never, or almost never, be a valid reason to grant compassionate release, because children *always* have foster care as a last resort, even if their caregiver died or was medically incapacitated. Thus, the court finds that foster care placement does not necessarily mean a defendant is unable to satisfy the family circumstances category. *See Pearson*, 2022 WL 8090111, at *3-4 (granting compassionate release after a child was placed into foster care); *see also United States v. Quinones Rodriguez*, 2020 WL 5045203, at *1 (W.D. Va. Aug. 26, 2020) (granting compassionate release where children were placed into foster care).

at 1 (father of Minor Daughter lost custody of her after physically abusing her); Docket 69-14 (indicating Minor Daughter's grandmother is medically and physically unable to care for Minor Daughter); Docket 69-16 (indicating Minor Daughter's great-grandmother is physically unable to care for Minor Daughter due to age); Docket 69-15 (indicating Adult Son 1 is unable to care for Minor Daughter due to his young age and responsibility for Minor Son 1); *Offender Locator*, S.D. Dep't of Corr., https://doc.sd.gov/adult/lookup/ (last visited July 23, 2025) (enter Michelle Stenseth and DOC No. 55233; Robert Stenseth and DOC No. 16269) (showing Watson's siblings are currently incarcerated or on parole). Currently, Minor Daughter has been placed at Millcreek Behavioral Health for an undetermined length of time before eventually returning to the foster care placement of Sarah Burman. *See* Docket 69-9; Docket 69 at 3.

The termination of Minor Daughter's guardianship, the repeated failure of foster care placements, the father's recent abuse of Minor Daughter, and the evidence indicating other possible caretakers are unavailable to care for Minor Daughter support a finding that Minor Daughter's caregiver is incapacitated.[2] *See* Docket 69-7 at 1; Docket 69-8 at 1; Docket 69-9. The United States argues that Watson has failed to show that Minor Daughter's placement at Millcreek Behavioral Health in Arkansas shows that there is a deficiency in her foster care placement. *See* Docket 73 at 4-5. The United States, however, fails to

---

[2] Minor Daughter has been placed in various temporary foster care placements before being sent to Millcreek Behavioral Health in August 2024. Docket 69-9; Docket 69 at 3-4. This shows that Minor Daughter has been unable to find stable care while in the foster care system. *See id.*

recognize that placement in a treatment facility was preceded by several failed

placements for Minor Daughter, indicating that Minor Daughter's time spent in

foster care has not been satisfactory and is representative of her lacking a valid

caregiver.[3] *See* Docket 69-9; *see also* Docket 69-3 at 2 (former guardian Robin

Jager writing "The State of South Dakota has massively failed these kids and

will continue to do so. There is no good place for them to go.") Thus, based on

the above, the court concludes that Watson is the sole available caregiver for

Minor Daughter.[4]

### 2.    Whether Defendant is a Valid Caretaker

While not explicit under § 1B1.13(b)(3)(A), the family circumstances

category is usually only considered an extraordinary and compelling reason for

---

[3] In fact, placement in the treatment facility, while likely meant to help Minor Daughter's mental health and behavioral issues, supports the finding that Minor Daughter is without a valid caregiver after both her own father abused her, and her temporary foster placements proved inadequate. *See* Docket 69-9; *see also* Docket 69-3 (former guardian indicating that Minor Daughter is experiencing mental health issues in part due to separation from mother).

[4] Watson argues that it is in Minor Daughter's best interest for her to be released to care for Minor Daughter due to the prevalence of child abuse at Millcreek Behavioral Health. Docket 69 at 15. While evidence of Millcreek Behavioral Health's recent issues with abuse or problematic practices towards children is not specific to Minor Daughter, it does indicate that her placement there is more deficient than sufficient. *Id.*; *see also* Staff of S. Comm. on Finance, 118th Cong., Warehouses of Neglect: How Taxpayers are Funding Systemic Abuse in Youth Residential Treatment Facilities, (June 12, 2024), https://www.finance.senate.gov/imo/media/doc/rtf_report_warehouses_of_ne glect.pdf*;* David Jackson*, Why a Mental Health Institute for Foster Children Became Known as "The Misery Mill"*, ProPublica (Mar. 11, 2020), https://www.propublica.org/article/illinois-dcfs-children-out-of-state-millcreek-behavioral-health-arkansas*; Millcreek Behavioral Health / Habilitation Center, Inc.,* Disability Rights Arkansas, https://disabilityrightsar.org/prtf-database/facility/millcreek/ (last visited July 25, 2025).

release when the defendant has proven she is a suitable caregiver, and that
release is in the best interest of the child. *See United States v. Merle Seeking
Land*, 2024 WL 3887068, at *3 (D.S.D. Aug. 21, 2024); *see also Willis*, 2024 WL
4452134, at *2; *Ramos*, 2021 WL 4507464, at *5. Courts have typically been
hesitant to grant compassionate release to a defendant who displays a violent
history or is inactive in the minor's life. *See Willis*, 2024 WL 4452134, at *2-3
(denying compassionate release in part because minor child is "content and
happy" with foster placement and defendant has history of violence, including
domestic violence); *see also Merle Seeking Land*, 2024 WL 3887068, at *3-4
(denying compassionate release in part because defendant's minor
granddaughter was born after he was incarcerated and he never had custody
over the child). The BOP Program Statement found at 5050.50 is a helpful tool
to guide the court on whether the defendant is an appropriate caregiver. *Merle
Seeking Land*, 2024 WL 3887068, at *3-4; BOP, *Program Statement 5050.50* at
8-9 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf
(last visited July 24, 2024). The Program Statement factors include evaluating
whether the inmate has committed violent acts, whether drugs or other
dangerous substances were present in the home, the amount of contact the
parent had with the child, whether there is evidence of child abuse or neglect,
whether there exists documentation of the inmate's parenting skills or
termination of parental rights, and the amount of programming the inmate was
involved in while incarcerated. *Id.*

     This court had weighed the 5050.50 factors for Watson in a previous

order denying her first motion for compassionate release. Docket 57 at 8-11. At that time, the court noted that Watson failed to supply evidence regarding several of the factors. *See id.* at 8 ("Watson failed to provide evidence that she would be eligible to have custody of her children, what her custodial rights over them might be, or her overall suitability to function as their primary caregiver."). Also, the court's prior consideration of the factors was focused on multiple children, as opposed to Watson's present motion, which only considers Minor Daughter's current circumstances. *See generally* Docket 69. Thus, the court has an opportunity to weigh the new evidence Watson has provided regarding her suitability as a caregiver for Minor Daughter.

Watson's prior criminal history is primarily made up of traffic violations, petty theft, drug use or possession, and prostitution. *See* Docket 40 at ¶¶ 39-65. Thus, for the first BOP factor, there is no evidence that Watson committed a violent act before or during her period of incarceration. This stands in contrast to the circumstances of *Willis* where the court denied compassionate release in part due to the defendant's history of violence and domestic abuse. *See Willis*, 2024 WL 4452134, at *2.

Watson had struggled with addiction to methamphetamine and, while not using the drug while pregnant, there are multiple instances where her children were around while Watson used drugs or drug transactions occurred. *See* Docket 40 ¶¶ 59, 75, 98-100. Watson claimed that her drug sales were, in part, used to help support her children. *Id.* ¶ 26. The fact that Watson used drugs while in custody of Minor Daughter and handled drug transactions

around her children is, and was, a factor weighing against her suitability as a caregiver. *See* Docket 57 at 8-10.

The next factor to consider is the amount of contact the defendant has had with the child. In *Merle Seeking Land*, the court denied defendant's request for compassionate release in part because the defendant lacked any interaction with the minor child. *See Merle Seeking Land*, 2024 WL 3887068, at *4. Here, however, Watson had full custody and control over Minor Daughter for most of the child's early childhood, from the child's birth in 2012[5] until Watson's arrest in 2018. *See* Docket 40 ¶ 90. Watson, importantly, has maintained consistent contact with Minor Daughter throughout her incarceration. *Id.* ("The defendant has regular contact with her children."); Docket 69-3 ("Throughout Nicole's incarceration she has consistently kept in contact with the kids."); Docket 69-9 ("Ms. Watson has continued to try and be as involved as possible in her daughter's life and keep in touch with her, despite her incarceration"); Docket 69-12 at 3 ("[Watson] communicates frequently with FSS Banza and continues to stay proactive with the wellbeing of her children"). In fact, Minor Daughter seems to do poorly when she is unable to contact Watson. *See* Docket 69-10 at 2 (Minor Daughter's former foster parent stating that when Minor Daughter is unable to speak with Watson she struggles more). Thus, there is ample evidence that Watson had custody of Minor Daughter and has maintained a

---

[5] While not clearly stated in Watson's PSR or the record, Minor Daughter is known to be 13 years old as of March 2025 and 7 years old as of March 2019. *See* Docket 40 at ¶ 90; Docket 69 at 1 (stating defendant's daughter is 13 years old).

relationship with her daughter despite her incarceration.

The record shows that there is no evidence of abuse or neglect by Watson towards Minor Daughter. *See generally* Docket 40. In fact, after Minor Daughter's father was abusive towards her, Watson agreed to grant Child Protective Services temporary custody of Minor Daughter. *See* Docket 69-8. This indicates that Watson has actively sought to protect Minor Daughter from abuse or neglect.

The above factors in part demonstrate Watson's parenting skills, and the court takes note of the praise she has received from observers and prior caretakers of Minor Daughter. *See* Docket 69-3; Docket 69-9; Docket 69-12 at 3. Watson has also received certificates and completed courses on parenting while in prison. *See* Docket 69-17 at 2. But Watson's parental rights over Minor Daughter are under threat. *See* Docket 69-11; Docket 78. Despite the State's wish to reunite Watson with Minor Daughter, due to Minor Daughter's foster placements and Watson's incarceration,[6] Watson's parental rights have been terminated. *See* Docket 69-11 (Watson concerned about losing parental rights and Saran Banza stating that if Watson was released she would get settled and work towards reunifying with Minor Daughter); Docket 69-18 at 2 (State declaring that it desires to grant Watson the opportunity to be a mother

---

[6] Under South Dakota law, if a parent is incarcerated, the child has been in state custody for at least a year, and there is little likelihood that those conditions will be remedied then the family court must terminate the parental rights of the child's parents. *See* SDCL §§ 26-8A-26, 26-8A-26.1.

to Minor Daughter and believes it is in the Minor Daughter's best interest); *In re A.L.L. & D.L.L.*, 49JUV24-000288 (S.D. Cir. Ct). While the state court terminated Watson's parental rights in May of 2025, Watson has appealed this decision to regain her parental rights. *See* Docket 69-11; Docket 78 (indicating that Watson is seeking an appeal in the termination of her parental rights). Thus, this court recognizes that Watson's parental rights are under threat and that compassionate release would grant her the ability to better pursue her appeal to reinstate her parental rights over Minor Daughter.

Considering the presented evidence and the circumstances surrounding both Minor Daughter and Watson, the court finds that the 5050.50 factors weigh in favor of Watson being a suitable caregiver for Minor Daughter. As part of her post-release plan, Watson indicates that she has worked with the Department of Social Services (DSS) to work to develop a plan to care for Minor Daughter even while she stays temporarily at the St. Francis House in Sioux Falls. *See* Docket 69-19 at 2. Watson has provided evidence of her post release employment plans, with her horticulture classes providing a basis for work once released. *See* Docket 69-17 at 3; Docket 69-19 (release plan); Docket 73-3 (showing Watson's participation in thousands of hours of horticulture courses while incarcerated). Watson's horticulture training is likely to be a great asset to assist her in finding employment once she is released. *See* Docket 69-12 at 2-3; Docket 69-20 at 2 (Watson stating she has risen within the horticulture program to "lead landscape tech responsible for teaching the new students"); *see also* Docket 73-3.

Although it is not completely clear that Watson would be able to take custody of and care for Minor Daughter immediately upon release, this is her goal, and she has a time-sensitive opportunity to do so. *See Fields*, 569 F. Supp. 3d at 242 (granting compassionate release to allow participation in custody hearings which "could prove critical to the custody determinations" and become a possible caregiver); *United States v. Fortson*, 2020 WL 3963729, at *2-3 (S.D. Ind. July 13, 2020) (granting defendant's request for compassionate release under the family circumstances category to allow defendant to participate in child custody proceedings and prevent the state from terminating his parental rights). Thus, the court finds that Watson's circumstances satisfy the criteria for the family circumstances category, and she has presented an extraordinary and compelling reason for her release.

### B.    Catch-All Category

The catch-all category allows for compassionate release where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). In her filings, Watson raises U.S.S.G. § 1B1.13(b)(5) as an extraordinary and compelling reason for her release. *See* Docket 69 at 19-21. Watson argues that if the circumstances of her Minor Daughter do not clearly satisfy the family circumstances category, then the present circumstances should satisfy the catch-all category because it is "similar in gravity" to the family circumstances

16

category. *See id.*; *see also* Docket 76 at 7-8. The United States does not specifically address the catch-all category because it considers its argument regarding the family circumstances category as addressing both arguments. *See* Docket 73 at 8 ("Watson does not raise any new information under this catch-all argument. The United States relies on the same analysis as discussed above."). While the court concludes that Watson's family circumstances do constitute an extraordinary and compelling reason for her release, this court will nonetheless briefly address the catch-all category.

Watson has relied on the catch-all category as a possible alternative because the family circumstances category may not as neatly fit Watson's circumstances. *See* Docket 69 at 19 ("[I]f this [c]ourt does not find that Ms. Watson's circumstances fit into the family circumstances category, this [c]ourt should find that her family circumstances and threat to her parental rights . . . are extraordinary and compelling reasons under the catch-all category."). This court has already weighed whether Minor Daughter's caregiver's legal incapacitation, her placement in foster care, and Watson's custody issues satisfy the family circumstances category. Typically, when circumstances have been weighed under one of the named categories it is improper to reconsider them under the catch-all category unless the circumstances are unusual or misplaced under the named categories. *See United States v. Shields*, 2025 WL 1684928, at *5 (D.S.D. June 16, 2025) (holding that arguments raised by the defendant regarding the catch-all category fail in part because the court had already considered them under the medical and family circumstances

categories, and it was not distinct from those considerations). Thus, this court will not decide whether Watson's circumstances would also satisfy the catch-all category because it has already found her family circumstances are an extraordinary and compelling reason for her release.

### III. Sentencing Factors

Next, the court weighs the § 3553(a) sentencing factors to determine if compassionate release is warranted. *See* 18 U.S.C. § 3582(c)(1)(A). Here, the court is faced with its previous determination regarding Watson and the § 3553(a) factors. *See* Docket 57 at 11-13 (finding § 3553(a) factors favored denying compassionate release for Watson). Watson, however, raises new arguments and provides fresh evidence supporting the finding that compassionate release is warranted. *See* Docket 69 at 21-25; Docket 69-2 (indicating other possible release dates which the court has not yet considered). Thus, the court will reconsider the factors. *See United States v. Thompson*, 2021 WL 2418573, at *6 (W.D. Ky. June 14, 2021) (noting concerns about prior bad behavior were eased by defendant providing supplemental filings indicating changed behavior).

The first factor the court considers is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Watson was arrested for involvement in a conspiracy to distribute methamphetamine. Docket 40 ¶¶ 1-4. Watson was intimately involved in the conspiracy, helping to transport and direct the transportation of methamphetamine within South Dakota. *Id.* ¶¶ 10-23. In total, roughly 7.65

18

kilograms (16.87 pounds) of methamphetamine were attributed to Watson. *Id.*
¶ 23. Watson accepted responsibility for her involvement. *Id.* ¶¶ 26-37. The
court finds that the nature and circumstances of Watson's offense weigh
against her motion because of the quantity of methamphetamine attributed to
her and the larger scale of the conspiracy, though it notes she accepted
responsibility for her actions.

The court also considers the characteristics of the defendant. 18 U.S.C.
§ 3553(a)(1). Watson has a lengthy criminal history of non-violent crimes,
largely centered on traffic violations or issues related to drug use or
distribution. *Id.* ¶¶ 39-83. Watson received a high criminal history score of nine
placing her in category IV. *Id.* ¶¶ 66-67. Watson reported she had a very
troubled life with her family, including her mother's alcoholism and physical
abuse from her stepfather. *Id.* ¶¶ 85, 95. Watson has had significant issues
with substance abuse and various mental health issues. *See id.* ¶¶ 94-104.
Watson has participated in numerous educational and treatment programs
while incarcerated and stayed sober throughout her time in prison. *See* Docket
69-1 at 2-3 (noting Watson's participation in Drug Abuse Education Program
and the BOP's classification of Watson as a low risk for recidivism); *see also*
Docket 69-17 (Watson's certificates of achievement). The court finds that,
despite her criminal history, Watson's characteristics slightly favor granting
her motion because of her rehabilitative efforts while in prison.

The next factor the court considers is the need for the sentence "to reflect
the seriousness of the offense, to promote respect for the law, and to provide

just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The guideline range for Watson's offense level of 31 and criminal history category of IV was 151 to 188 months. Docket 40 ¶ 121. However, the statutory minimum for Watson's offense was 180 months, meaning her guideline range was 180 to 188 months.[7] *Id.* Watson has served 54.6% of her sentence as of March 17, 2025. Docket 73-2. Watson, however, is eligible for a release date earlier than her projected release date of January 4, 2031, due to First Step Act credits. Docket 69-2. In fact, while at the BOP's discretion, Watson is eligible for early release as early as August 23, 2026. *See id.* This does not change the total percentage of Watson's sentence that she has served, however, it does support a finding that she has faced a just punishment. Given that Watson was sentenced within her guideline range, has served over half of her sentence, and is eligible for early release within the next two years, the court finds that early release would reflect the seriousness of her offense, promote respect for the law, and provide just punishment.

The remaining § 3553(a) factors support a sentence reduction. If the court granted compassionate release, similar conduct in others might be deterred because Watson has already served over half of her sentence. *See* 18 U.S.C. § 3553(a)(2)(B). The court does not consider Watson to be dangerous to society due to the nonviolent nature of the crime for which she is incarcerated. *See* 18 U.S.C. § 3553(a)(2)(C). Overall, the court finds the § 3553(a) factors

---

[7] For comparison, Watson's co-defendants were sentenced to 292 months (Quadiri Ayodele), 147 months (Brandon McGuire), and 63 months (Nicole Christine Merriweather). Docket 40 at 1.

support granting Watson's motion and confirm that early release from custody is warranted.

## CONCLUSION

After careful consideration, the court concludes that Watson has satisfied the extraordinary and compelling reason standard under § 3582(c)(1)(A). Thus, it is

ORDERED that Watson's motion for compassionate release (Docket 69) is granted, and Watson's term of imprisonment is hereby reduced to time served, subject to the following paragraphs. It is

FURTHER ORDERED that this order is stayed for one week from the date of this order to permit the Bureau of Prisons and the United States Probation Office to assist Watson's transition from custody to release status. It is

FURTHER ORDERED that upon her release, Watson will reside in Sioux Falls, South Dakota, at a location approved by the United States Probation Office. It is

FURTHER ORDERED that within 72 hours of release from custody, Watson shall report to the United States Probation Office in Sioux Falls, South Dakota. It is

FURTHER ORDERED that Watson shall serve the previously imposed ten-year period of supervised release under the conditions of supervised release previously imposed by the court at sentencing. It is

FURTHER ORDERED that the United States Probation Office is directed to prepare an amended Judgment to reflect the amended sentence and to set

forth all conditions of supervision that will apply to Watson.

Dated August 5, 2025.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE